**475 BUILDING COMPANY, LLC,**

**Landlord**

**NOTTINGHAM CAPITAL MANAGEMENT, LLC**

**Tenant**

**LEASE**

**Premises:**   475 Park Avenue South
Part of 30th Floor
New York, New York 10016

## TABLE OF CONTENTS

**ARTICLE**                                                                    **PAGE**

ARTICLE 1 Premises...................................................................................1
ARTICLE 2 Commencement of Term..........................................................1
ARTICLE 3 Rent.........................................................................................2
ARTICLE 4 Use..........................................................................................4
ARTICLE 5 Alterations, Fixtures................................................................5
ARTICLE 6 Repairs....................................................................................8
ARTICLE 7 Floor Load; Noise...................................................................9
ARTICLE 8 Laws, Ordinances, Requirements of Public Authorities...........9
ARTICLE 9 Insurance...............................................................................10
ARTICLE 10 Damage by Fire or Other Cause.........................................12
ARTICLE 11 Assignment, Subletting, Mortgaging...................................13
ARTICLE 12 No Liability of Landlord and Indemnity of Tenant................21
ARTICLE 13 Moving of Heavy Equipment................................................22
ARTICLE 14 Condemnation......................................................................22
ARTICLE 15 Entry, Right to Change Public Portions of the Building.........23
ARTICLE 16 Conditional Limitations........................................................24
ARTICLE 17 Mechanic's Liens.................................................................29
ARTICLE 18 Landlord's Right to Perform Obligations..............................29
ARTICLE 19 Covenant of Quiet Enjoyment.............................................30
ARTICLE 20 Excavation...........................................................................30
ARTICLE 21 Services and Equipment......................................................30
ARTICLE 22 Escalation............................................................................33
ARTICLE 23 Electric Inclusion.................................................................38
ARTICLE 24 Broker..................................................................................41
ARTICLE 25 Subordination and Ground Lease........................................41
ARTICLE 26 Estoppel Certificate............................................................43
ARTICLE 27 Waiver of Jury Trial.............................................................44
ARTICLE 28 Surrender of Premises.........................................................44
ARTICLE 29 Rules and Regulations........................................................45
ARTICLE 30 Successors and Assigns and Definitions...........)...............45
ARTICLE 31 Notices.................................................................................46
ARTICLE 32 No Waiver; Entire Agreement..............................................46
ARTICLE 33 Captions..............................................................................49
ARTICLE 34 Inability to Perform..............................................................49
ARTICLE 35 No Representations by Landlord..........................................50
ARTICLE 36 Late Payment Charges........................................................50
ARTICLE 37 Rent Control.........................................................................50
ARTICLE 38 Security Deposit...................................................................51
ARTICLE 39 Confidentiality......................................................................53
ARTICLE 40 Supplemental Air Conditioning............................................54
ARTICLE 41 Renewal Option....................................................................55

i

ARTICLE 42 Arbitration ..............................................................................56

Testimonium and signatures...................................................................
ACKNOWLEDGMENT...............................................................................
SCHEDULE A     Floor Plan.......................................................................
SCHEDULE B     Work Letter .....................................................................
SCHEDULE C     Description of the Land ...................................................
SCHEDULE D     Rules and Regulations .....................................................
SCHEDULE E     Cleaning Specifications ...................................................
SCHEDULE F     Definitions........................................................................

**INDENTURE OF LEASE** ("Lease") made as of this 11th day of August, 2010, between **475 BUILDING COMPANY, LLC**, a New York limited liability company, having an office at 750 Lexington Avenue, New York, New York 10022 ("Landlord") and **NOTTINGHAM CAPITAL MANAGEMENT, LLC**, a Delaware limited liability company, having an office at 489 Fifth Avenue, New York, New York 10017 ("Tenant").

## W I T N E S S E T H:

## ARTICLE 1

## Premises

Landlord hereby leases to Tenant and Tenant hereby hires from Landlord the following space ("Demised Premises"): part of the 30th floor, as shown on the floor plan (Schedule A) attached hereto, in the office building known as and by the street number 475 Park Avenue South, in the Borough of Manhattan, City and State of New York ("Building"), upon and subject to the terms, covenants and conditions hereafter set forth.

TO HAVE AND TO HOLD the Demised Premises unto Tenant for a term commencing on the "Commencement Date" (as defined in Article 2), and ending on a date, (the "Expiration Date") which shall be four (4) years and four (4) months after the Commencement Date, plus the number of days required, if any, to have such term expire on the last day of a calendar month, or on such earlier date upon which said term may expire or terminate pursuant to any of the conditions or covenants of this lease or pursuant to law.

IT IS MUTUALLY COVENANTED AND AGREED between Landlord and Tenant as follows:

## ARTICLE 2

## Commencement of Term

Section 2.01. The term of this Lease and the payment of minimum rent hereunder shall commence on the date that the Landlord's Work (as hereinafter defined) in the Demised Premises shall be substantially completed and possession of the Demised Premises is delivered to Tenant (the "Commencement Date").

The Demised Premises shall be deemed substantially completed when Landlord has substantially performed the work required to be performed pursuant to Schedule B annexed hereto ("Landlord's Work"), and Landlord shall deliver possession of the Demised Premises on the Commencement Date. Except as set forth on Schedule B, Landlord shall have no obligation to perform any other work in connection with preparing the Demised Premises for Tenant's occupancy. Landlord's Work shall be deemed to be

substantially completed even though minor details or adjustments, none of which materially interfere with Tenant's access to and use of the Demised Premises may not then have been completed, however Landlord, at its sole cost and expense, shall promptly thereafter complete any unfinished Landlord's Work. Notwithstanding the foregoing, if Tenant enters into the possession of the Demised Premises and commences the conduct of its business, the Commencement Date shall be the date of such entry regardless of whether the foregoing events shall have occurred.

        Section 2.02. Tenant has fully inspected the Demised Premises, is familiar with the condition thereof and agrees to accept possession of the same on the Commencement Date in its then "As Is" condition.

        Section 2.03. If, prior to the Commencement Date, upon the request of Landlord, subject to Landlord's consent, Tenant shall enter the Demised Premises to make any installations, Landlord shall have no liability or obligation for the care or preservation of Tenant's property, except if due to the negligence of Landlord, its agents, contractors and employees.

        Section 2.04. Promptly after the Commencement Date, Landlord and Tenant will execute a statement confirming the Commencement and Expiration Dates of this Lease, in accordance with the foregoing provisions

        Section 2.05.  Tenant expressly waives any right to rescind this Lease under Section 223-a of the New York Real Property Law or under any present or future statute of similar import then in force and further expressly waives the right to recover any damages, direct or indirect, which may result from Landlord's failure to deliver possession of the Demised Premises on the Commencement Date. Tenant agrees that the provisions of this Section are intended to constitute "an express provision to the contrary" within the meaning of said Section 223-a.

## ARTICLE 3

### Rent

        Section 3.01. Tenant shall pay, as rent for the Demised Premises from and after the Commencement Date, the following:

        (a)    a fixed minimum rent (the "minimum rent") at the annual rate of $201,875.00 per annum (payable $16,822.92 per month); and

        (b)    all other sums and charges required to be paid by Tenant under the terms of this Lease (including without limitation, the payments required to be made under Article 22), which shall be deemed to be and are sometimes referred to hereafter as additional rent.

2

Section 3.02. Notwithstanding the provisions of Section 3.01 hereof, and provided Tenant is not then in default hereunder after any applicable notice and expiration of any applicable cure period, Tenant shall be entitled to an abatement of part of the minimum rent only in the amount of $15,437.50 per month for each of the 1st, 2nd, 3rd, 4th and 5th months following the Commencement Date, provided that the balance of minimum rent of $1,385.42 for each such month shall be due and payable. Tenant acknowledges that the consideration for the aforesaid abatement of minimum rent is Tenant's agreement to perform all of the terms, covenants and conditions of this Lease on its part to be performed. Therefore, if Tenant shall be in default under any of the terms, covenants and conditions at any time, during the term hereof, the aggregate amount of all minimum rent that was abated shall immediately thereafter become due and payable by Tenant to Landlord. In the event of Tenant's failure to pay such aggregate amount to Landlord, Landlord shall be entitled to the same rights and remedies as in the event of tenant's default in the payment of minimum rent. Tenant shall be required to pay additional rent and all other sums from and after the Commencement Date.

Section 3.03. The minimum rent shall be payable in equal monthly installments in advance on the first day of each and every month during the term of this Lease from the after the Commencement Date, except that the amount of $16,822.92 shall be paid upon the execution of this Lease and be applied to the payment of minimum rent for the sixth (6th) month of the term following the Commencement Date.

Section 3.04. Tenant shall pay the minimum rent and additional rent in lawful money of the United States which shall be legal tender for the payment of all debts, public and private, at the time of payment.

Landlord and Tenant agree that Tenant shall pay minimum rent, additional rent and other amounts now due or hereafter to become due to the Landlord or its agent as provided for in this Lease, (as and when due) directly to the following lock-box account:

> 475 Building Company, LLC
> PO Box 822409
> Philadelphia, PA 19182-2409

All rent checks shall be made payable to 475 Building Company, LLC

Section 3.05. The minimum rent and additional rent shall be payable by Tenant without any set-off, abatement or deduction whatsoever and without notice or demand, except as otherwise expressly provided herein.

3

# ARTICLE 4

## Use

Section 4.01. Tenant shall use and occupy the Demised Premises only for the purposes of general, executive and administrative offices and uses ancillary hereto, and for no other use or purpose.

Section 4.02. Notwithstanding the provisions of Section 4.01, Tenant shall not use or allow the use of the Demised Premises or any part thereof (1) for the cooking and/or sale of food, except that Tenant may warm food with a microwave; (2) for storage for sale of any alcoholic beverage in the Demised Premises; (3) for the storage and/or sale of any product or material from the Demised Premises; (4) for manufacturing or printing purposes; (5) for the conduct of a school or training facility or similar type of business which results in the presence of the general public in the Demised Premises; (6) for the conduct of the business of an employment agency or personnel agency; (7) for the conduct of any public auction or public exhibition; (8) for occupancy by a foreign, United States, state, municipal or other governmental or quasi-governmental body, agency or department or any authority or other entity which is affiliated therewith or controlled thereby and which has diplomatic or sovereign immunity or the like with respect to a commercial lease; (9) for messenger or delivery service (excluding Tenant's own employees or outside services); (10) as a public stenographer or typist; (11) as a telephone or telegraph agency; (12) as a company engaged in the business of renting office(s) or desk space in the Demised Premises; (13) as medical offices or a laboratory; (14) as a travel agency; (15) as a dating service; (16) as a restaurant; (17) as a night club, discotheque, arcade or like kind establishments; (18) as a public or quasi-public health facility, radiation treatment facility, methadone clinic or other drug related clinic, abortion clinic, or for any practice conducted in or through the format of a clinic; (19) as a pawn shop; (20) as an off-track betting parlor; (21) as a homeless shelter, soup kitchen or similar use; (22) for the sale or display or pornographic products or services; (23) for the use or storage of flammable liquids or chemicals (unless incidental to a permitted use); (24) as a funeral parlor; (25) for the sale or grooming of pets; or (26) for any form of spiritualist services, such a fortune telling or reading.

Section 4.03. If any governmental license or permit, other than a Certificate of Occupancy, is required for the proper and lawful conduct of Tenant's business in the Demised Premises, or any part thereof, and if failure to secure such license or permit would in any way affect Landlord, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection by Landlord. Tenant shall at all times comply with the terms and conditions of each such license or permit.

Section 4.04. Tenant shall not at any time use or occupy, or suffer or permit anyone to use or occupy, the Demised Premises, or do or permit anything to be done in the Demised Premises, in violation of the Certificate of Occupancy for the Demised Premises or for the Building, and will not permit or cause any act to be done or any condition to exist on the Demised Premises which may be dangerous unless safeguarded as required by

4

law, or which in law constitutes a nuisance, public or private, or which may make void or voidable any insurance then in force covering the Building and building equipment.

## ARTICLE 5

### Alterations, Fixtures

Section 5.01. Tenant, without Landlord's prior consent, shall make no alterations, installations, additions, or improvements in or to the Demised Premises, including, but not limited to, any air-conditioning or cooling system, or any unit or part thereof or other apparatus of like or other nature, railings, mezzanine floors, galleries and the like. Subject to Landlord's consent, which shall not be unreasonably withheld, Tenant may make non-structural interior alterations ("Non-Structural Alterations") in the Demised Premises, provided that: (i) the Non-Structural Alterations shall not affect the Building structure or Building Systems; (ii) the Non-Structural Alterations shall not affect any area, or cannot be seen from any area, outside of the Demised Premises or the Building; (iii) the Non-Structural Alterations shall comply with Governmental Requirements and any other provisions of this Article; (iv) the Non-Structural Alterations shall not interfere with the normal and customary business operations of the other tenants of the Building, and (v) the Non-Structural Alterations shall not cause or create a dangerous or hazardous condition. Notwithstanding the foregoing, Tenant may make the Non-Structural Alterations, or may paint the Demised Premises and install carpeting, painting, wall covering and furnishings in the Demised Premises (the "Cosmetic Improvements") (collectively, the "Permitted Alterations") without Landlord's consent but subject to Landlord's approval of contractors, provided that: (A) Tenant delivers to Landlord written notice of such Permitted Alterations at least ten (10) business days prior to the commencement thereof and (B) the Permitted Alterations do not cost more than $25,000 in the aggregate during any twelve (12) consecutive month period. With respect to any work in the Demised Premises to be performed by or on behalf of Tenant pursuant to this Lease, Tenant agrees to use Landlord's designated Building expediter, if applicable, to file any plans, obtain any building permits, process any applications or other documents which may be required in connection with such work. If any contractor, other than Landlord, shall perform any work or Alterations, such contractor shall first be approved by Landlord and as a condition of such approval Tenant shall pay to Landlord ten (10%) percent of the cost of such work and Alterations for supervision, coordination and other expenses incurred by Landlord in connection therewith, provided, that such ten (10%) percent charge shall not apply to (i) Tenant's Work to prepare the Demised Premises for Tenant's initial occupancy and (ii) Cosmetic Improvements. In connection with any request by Tenant of Landlord that Landlord approve a contractor or subcontractors, Tenant shall cause the proposed contractor or subcontractor to complete and submit to Landlord such reasonable questionnaire, if any, as Landlord shall require as part of Landlord's contractor integrity program. Thereafter, Tenant agrees to cooperate with Landlord in connection with the implementation of such program and to cause its contractors to comply therewith. Tenant acknowledges that an ICAP Program (as hereinafter defined) may impose requirements with respect to the hiring and training practices, among other matters, of contractors and

subcontractors engaged to perform certain work in the Building for Tenant (collectively, herein called "Tenant's Contractors"). Tenant shall use Tenant's Contractors (subject to Landlord's approval) that qualify under the applicable requirements of the ICAP Program for the performance of Tenant's initial work and any subsequent alterations to the Demised Premises and Tenant will require Tenant's Contractors to comply with the provisions of the ICAP Program. If Landlord is notified of any violation of the ICAP Program by Tenant's Contractors, Landlord shall promptly advise Tenant, and Tenant shall take all necessary actions to cure such violations. Workers' compensation and commercial general liability insurance covering claims for personal injury, death, bodily injury and property damage and property damage insurance, all in amounts and with companies and/or forms reasonably satisfactory to Landlord, shall be provided and at all times maintained by Tenant's contractors engaged in the performance of the work, and before proceeding with the work certificates of such insurance shall be furnished to Landlord. If consented to by Landlord, all such work shall be done at Tenant's sole expense and at such times and in such manner as Landlord may from time to time designate and in full compliance with all governmental authorities having jurisdiction thereover and shall be done in a good and workmanlike manner. Upon completion of the work, Tenant shall deliver to Landlord full scale "as built" plans for the same, in both paper and electronic CAD (either in DWF or DWG) formats. All work affixed to the realty or if not so affixed but for which Tenant shall have received a credit (other than Tenant's trade fixtures), shall become the property of Landlord and shall remain upon, and be surrendered with, the Demised Premises as a part thereof at the end of the term, without allowance to Tenant or charge to Landlord, unless Landlord elects otherwise on notice to Tenant given at any time prior to or on any termination of this Lease. If Landlord shall elect otherwise, then all such work or such portion thereof as Landlord shall elect at the time that Landlord consents to the work shall be removed by Tenant and Tenant shall restore the Demised Premises to its original condition, at Tenant's expense. If any Building facilities or services, including but not limited to air-conditioning and ventilating equipment installed by Landlord are adversely affected or damaged by reason of work by Tenant, Tenant, at its expense, shall repair such damage and shall correct the work so as to prevent any further damage or adverse affect on such facilities or services.

Section 5.02. Prior to commencing any work pursuant to the provisions of Section 5.01, Tenant shall furnish to Landlord:

(a)     Plans and specifications for the work to be done in both paper and electronic CAD (either in DWF or DWG) formats.

(b)     Copies of all governmental permits and authorizations which may be required in connection with such work.

(c)     A certificate evidencing that Tenant (or Tenant's contractor) has procured workers' compensation insurance covering all persons employed in connection with the work who might assert claims for death or bodily injury against Overlandlord, as defined in Article 25, Landlord, Tenant or the Building.

6

(d)     Such additional personal injury and property damage insurance (over and above the insurance required to be carried by Tenant pursuant to the provisions of Section 9.03) as Landlord may reasonably require because of the nature of the work to be done by Tenant.

(e)     A bond or other security satisfactory to Landlord in the amount of one hundred ten (110%) percent of the cost of the work to insure completion of the work.

Section 5.03. No approval of plans or specifications by Landlord or consent by Landlord allowing Tenant to perform work in the Demised Premises shall be deemed to be an agreement by Landlord that the contemplated work complies with any Governmental Requirements or insurance requirements or the certificate of occupancy for the Building nor a determination or representation by Landlord that the contemplated work will be functional or operational in the Demised Premises nor shall it be deemed to be a waiver by Landlord of the compliance by Tenant of any of the terms of this Lease. Neither Landlord, Landlord's agents, the Overlandlord nor the leasehold mortgagee shall be liable for any labor or materials furnished or to be furnished to Tenant upon credit, and no mechanic's or other lien for such labor or materials shall attach to or affect any estate or interest of Landlord, Overlandlord or the leasehold mortgagee in and to the Demised Premises or the Building Project.

Section 5.04. Where furnished by or at the expense of Tenant (except the replacement of an item theretofore furnished and paid for by Landlord or for which Tenant has received a credit), all movable property, furniture, furnishings and trade fixtures ("personalty") other than those affixed to the realty shall remain the property of and shall be removed by Tenant on or prior to any termination or expiration of this Lease, and, in the case of damage by reason of such removal, Tenant, at Tenant's expense, promptly shall repair the damage. If Tenant does not remove any such personalty, Landlord, at its election, (a) may cause the personalty to be removed and placed in storage at Tenant's expense or (b) may treat the personalty as abandoned and may dispose of the personalty as it sees fit without accounting to Tenant for any proceeds realized upon such disposal.

Section 5.05. Tenant agrees that the exercise of its rights pursuant to the provisions of this Article 5 shall not be done in a manner which would create any work stoppage, picketing, labor disruption or dispute or violate Landlord's union contracts affecting the Building or unreasonably interfere with the business of Landlord or any tenant or occupant of the Building. In the event of the occurrence of any condition described above arising from the exercise by Tenant of its right pursuant to the provisions of this Article 5, Tenant shall, immediately upon written notice from Landlord, cease the manner of exercise of such right giving rise to such condition. In the event Tenant fails to cease such manner of exercise of its rights as aforesaid, Landlord, in addition to any rights available to it under this Lease and pursuant to law, shall have the right to injunction without notice. With respect to Tenant's work, Tenant shall make all arrangements for, and pay all

expenses incurred in connection with, use of the freight elevators servicing the Demised Premises during those hours other than as provided in Section 21.01(a).

Section 5.06.  Provided that Tenant is not in default, after any applicable notice and the expiration of any applicable grace period, of any of the terms and conditions of this Lease, Tenant shall, at no additional charge, have the non-exclusive right to use the Building's freight elevator for up to eight (8) hours, in the aggregate, to be used in four (4) hour increments (during non-standard operating hours) during the performance of Tenant's work and move-in to the Demised Premises during the first three (3) months from and after the Commencement Date (collectively, the "Move-In Period"). The standard operating hours for the freight elevator are Monday to Friday, from 8 A.M. to 6 P.M., except Saturdays, Sundays and holidays. The move-in and move-out shall not take place during business hours.  During the Move-In Period, Tenant shall make all arrangements for and pay all other costs in connection with the use of the freight elevators in accordance with Landlord's customary charges therefor.  After the Move-In Period, Tenant shall make all arrangements for, and pay all costs incurred in connection with the use of the freight elevators in accordance with Landlord's customary charges therefor.

## ARTICLE 6

### Repairs

Section 6.01. Tenant shall take good care of the Demised Premises and the fixtures and appurtenances therein and of all portions of the HVAC, mechanical, plumbing and electrical systems within and exclusively serving the Demised Premises, and at its sole cost and expense make all repairs thereto as and when needed to preserve them in good working order and condition.  All damage or injury to the Demised Premises or the Building or to any building equipment caused by Tenant moving property in or out of the Building or by installation or removal of personalty or resulting from negligence or conduct of Tenant, its employees, agents, contractors, customers, invitees and visitors, shall be repaired, promptly by Tenant at Tenant's expense, and whether or not involving structural changes or alterations, to the satisfaction of Landlord.  All repairs shall include replacements or substitutions where necessary and shall be at least equal to the quality, class and value of the property repaired, replaced or substituted and shall be done in a good and workmanlike manner.

Section 6.02. Landlord shall, at Landlord's sole expense, perform all maintenance, repairs and replacements, structural and otherwise, to the exterior and public portions of the Building and the Building systems, unless Tenant is required to make them under the provisions of Section 6.01, or unless required as a result of the performance or existence of alterations performed by Tenant or on its behalf, in which event Tenant, at its expense, shall perform such maintenance, repairs or replacement.  Landlord shall have no liability to Tenant by reason of any inconvenience, annoyance, interruption or injury to business arising from Landlord's making any repairs or changes which Landlord is required or permitted by this Lease, or required by law, to make in or to all or any portion of the

8

interior or exterior of the Building or the Demised Premises, or in or to the fixtures, equipment or appurtenances of the Building or the Demised Premises.

Section 6.03. Tenant shall not store or place any materials or other obstructions in the lobby or other public portions of the Building, or on the sidewalk abutting the Building.

## ARTICLE 7

### Floor Load; Noise

Section 7.01. Tenant shall not place a load upon any floor of the Demised Premises which exceeds the load per square foot which such floor was designed to carry (50 lbs. live load per square foot).

Section 7.02. Business machines and mechanical equipment belonging to Tenant which cause noise, vibration or any other nuisance that may be transmitted to the structure or other portions of the Building or to the Demised Premises, to such a degree as to be objectionable to Landlord or which interfere with the use or enjoyment by other tenants of their premises or the public portions of the Building, shall be placed and maintained by Tenant, at Tenant's expense, in settings of cork, rubber or spring type vibration eliminators sufficient to eliminate such objectionable or interfering noise or vibration.

## ARTICLE 8

### Laws, Ordinances, Requirements of Public Authorities

Section 8.01.

(a)    Tenant, at its expense, shall comply with all laws, orders, ordinances, rules and regulations and directions of Federal, State, County and Municipal authorities and departments thereof having jurisdiction over the Demised Premises and the Building, including without limitation the Americans With Disabilities Act (collectively, "Governmental Requirements") referable to Tenant or the Demised Premises, whether or not arising by reason of (i) Tenant's occupancy, use or manner of use of the Demised Premises, or any installations made therein by or at Tenant's request, or (ii) any default by Tenant under this Lease.

(b)    Landlord, at its expense, shall comply with Governmental Requirements relating to the public portions of the Building and that Tenant is not obligated to comply with them under the provisions of subdivision (a) of this Section. Landlord, at its expense, may contest the

9

validity of any Governmental Requirements and postpone compliance therewith pending such contest.

Section 8.02. If Tenant receives written notice of any violation of any Governmental Requirements applicable to the Demised Premises, it shall give prompt written notice thereof to Landlord.

Section 8.03. Tenant will not clean, nor allow any window in the Demised Premises to be cleaned, from the outside in violation of Section 202 of the Labor Law or the rules of the Board of Standards and Appeals or of any other board or body having or asserting jurisdiction.

Section 8.04. Landlord shall deliver to Tenant an ACP-5 certificate to Tenant's commencement of its work.

## ARTICLE 9

### Insurance

Section 9.01. Tenant shall not do or permit to be done any act or thing in or upon the Demised Premises which will invalidate or be in conflict with the Certificate of Occupancy for the Building or the terms of the insurance policies covering the Building and the property and equipment therein; and Tenant, at its expense, shall comply with all rules, orders, regulations and requirements of the New York Board of Fire Underwriters or any other similar body having jurisdiction, and of the insurance carriers, and shall not knowingly do or permit anything to be done in or upon the Demised Premises in a manner which increases the rate of insurance for the Building or any property or equipment therein over the rate in effect on the Commencement Date.

Section 9.02. If, by reason of Tenant's failure to comply with the provisions of Section 9.01 or any of the other provisions of this Lease, the rate of insurance for the Building or the property and equipment of Landlord shall be higher than on the Commencement Date, Tenant shall pay to Landlord any additional or increased insurance premiums to the extent resulting therefrom thereafter paid by Landlord, and Tenant shall make such payment forthwith on demand of Landlord. In any action or proceeding wherein Landlord and Tenant are parties, a schedule or "make up" of any insurance rate for the Building or Demised Premises issued by the New York Fire Insurance Exchange, or other body establishing fire insurance rates for the Building, shall be conclusive evidence of the facts therein stated and of the several items and charges in the insurance rates then applicable to the Building or Demised Premises.

Section 9.03.

(a)     Tenant covenants to provide on or before the Commencement Date and to keep in force during the term hereof, the

10

following insurance:

(i)     A commercial general liability policy, including contractual liability, naming Landlord (and Landlord's designees) and Overlandlord (as defined in Article 25) as additional insureds, protecting and indemnifying Landlord, Tenant and Overlandlord against any and all claims for personal injury, death, bodily injury or property damage occurring upon, in or about the Demised Premises, and the public portions of the Building used by Tenant, its employees, agents, contractors, customers, invitees, and visitors, including, without limitation, personal injury, death, bodily injury or property damage resulting from Tenant's use and occupancy of the Demised Premises and any work performed by or on behalf of Tenant, with coverage of not less than an aggregate of $3,000,000.00 combined single limit for personal injury, death and property damage arising out of one occurrence or accident.

(ii)    All risk property insurance utilizing the special form in an amount adequate to cover the cost of replacement of all personal property, fixtures, furnishings and equipment, including Tenant's work as set forth in Section 5.01, located in the Demised Premises.

(iii)   Worker's compensation insurance in an amount as required by applicable law.

(iv)    Business interruption insurance covering those risks referred to in subdivision ii) above in an amount equal to all rents payable under this Lease for a period of twelve (12) month, commencing with the date of loss.

(b)    All such insurance shall (i) be effected under valid and enforceable policies, (ii) be issued by insurers of recognized responsibility authorized to do business in the State of New York, (iii) contain a provision whereby the insurer agrees not to cancel the insurance without at least thirty (30) days' prior written notice to Landlord and any mortgagee of Landlord, (iv) contain a provision that no act or omission of Tenant shall result in forfeiture of the insurance as against Landlord or any mortgagee of Landlord, (v) be in form acceptable to Landlord, (vi) be primary and not contribute with any insurance carried by Landlord, and (vii) be placed with insurers carrying a Bests rating of at least A-VIII.

On or before the Commencement Date, Tenant shall deliver to Landlord duplicate originals of the aforesaid policies or certificates evidencing the aforesaid insurance coverage, such certificates to contain an endorsement naming Landlord (and Landlord's designees) as additional insureds for liability insurance, and renewal policies or

11

certificates shall be delivered to Landlord at least thirty (30) days prior to the expiration date of each policy with proof of payment of the premiums thereof.

Section 9.04.      Landlord and Tenant shall each secure an appropriate clause in, or an endorsement upon, each fire or extended coverage policy obtained by it and covering the Building, the Demised Premises or the personal property, fixtures and equipment located therein or thereon, pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim it might have against said third party (including any mortgagee of Landlord). The waiver of subrogation or permission for waiver of any claim herein before referred to shall extend to the agents of each party and its employees and, in the case of Tenant, shall also extend to all other persons and entities occupying or using the Demised Premises in accordance with the terms of this Lease. If and to the extent that such waiver or permission can be obtained only upon payment of an additional charge, then, the party benefiting from the waiver or permission shall pay such charge upon demand, or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions hereof relating to such waiver or permission.

Subject to the foregoing provisions of this Section 9.04, and insofar as may be permitted by the terms of the insurance policies carried by it, (i) each party hereby releases the other (including any mortgagee of Landlord) with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damages or destruction with respect to its property by fire or other casualty (including rental value or business interruption, as the case may be) occurring during the term of this Lease, and (ii) Tenant releases other tenants but only to the extent that the policies of such other tenants permit a similar waiver for the benefit of Tenant and such other tenant gives such a waiver.

## ARTICLE 10

### Damage by Fire or Other Cause

Section 10.01.      If the Demised Premises shall be damaged by fire (or other hazards included in extended coverage endorsements to fire insurance policies covering property in the City of New York), the damage shall be repaired by and at the expense of Landlord and the minimum rent until such repairs shall be made, shall be apportioned according to the part of the Demised Premises which is usable by Tenant. Landlord shall have no responsibility to repair any damage to Tenant's work (as referred to in Section 5.01), the same being the responsibility of Tenant. No penalty shall accrue for delays which may arise by reason of adjustment of insurance by Landlord, unavoidable delays (as hereinafter defined), or any other cause beyond Landlord's reasonable control. Tenant shall give immediate notice to Landlord in case of fire or other damage to the Demised Premises of which Tenant has knowledge. If the Demised Premises are totally or substantially damaged or are rendered wholly or substantially untenantable by fire or any

such other casualty and if Landlord decides not to restore or rebuild the same, or if the Building shall be so damaged that Landlord shall decide to demolish it or to rebuild it (whether or not the Demised Premises shall have been damaged), or if more than twenty five (25%) percent of the Demised Premises are damaged during the last two (2) years of the term of this Lease, Landlord at its election may, within ninety (90) days after such fire or other casualty, notify Tenant of such decision, and thereupon the term of this Lease shall expire by lapse of time upon the third (3rd) day after such notice is given, and Tenant shall vacate and surrender the Demised Premises to Landlord.  Tenant hereby waives the provisions of Section 227 of the Real Property Law, and the provisions of this Article shall govern and control in lieu thereof.  If the damage is due to the fault or neglect of Tenant, the debris shall be removed by, and at the expense of, Tenant.

Section 10.02.       No damages or compensation shall be payable by Landlord nor shall Tenant make any claim for inconvenience, loss of business or annoyance arising from any repair or restoration of any portion of the Demised Premises or of the Building.

## ARTICLE 11

### Assignment, Subletting, Mortgaging

Section 11.01.       Tenant will not, by operation of law or otherwise, assign, mortgage or encumber this Lease or sublet or permit the Demised Premises or any part thereof to be used by others, without Landlord's prior written consent in each instance.  If this Lease be assigned, or if the Demised Premises or any part thereof be underlet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no assignment, underletting, occupancy or collection shall be deemed a waiver of the provisions hereof, the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained.   The consent by Landlord to any assignment, subletting, mortgage or encumbrance shall not in any manner be construed to relieve Tenant from obtaining Landlord's express written consent to any other or further assignment, subletting, mortgage or encumbrance.   In no event shall any permitted sublessee assign or encumber its sublease or further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space or any part thereof to be used or occupied by others, without Landlord's prior written consent in each instance.

Section 11.02.       If Tenant shall at any time or times during the term of this Lease desire to assign this Lease or sublet all or part of the Demised Premises, Tenant shall give written notice thereof to Landlord, which notice shall be accompanied by (a) a conformed or photostatic executed copy of the proposed executed assignment or sublease, together with an abstract of the material terms of the assignment or sublease, the effective or commencement date, which shall be not less than thirty (30) nor more than sixty (60) days after the giving of such notice, (b) a statement setting forth in reasonable

13

detail the identity of the proposed assignee or subtenant, the nature of its business and its proposed use of the Demised Premises, and (c) a statement, in sufficient detail satisfactory to Landlord, setting forth the calculations of the sums to be payable to Landlord pursuant to the provisions of Section 11.10, and (d) current financial information with respect to the proposed assignee or subtenant, including, without limitation, its most recent financial report.  Such notice shall be deemed an offer from Tenant to Landlord whereby Landlord (or Landlord's designee) may, at its option, (i) sublease such space (hereinafter called the "Leaseback Space") from Tenant upon the terms and conditions hereinafter set forth (if the proposed transaction is a sublease of all or part of the Demised Premises), (ii) terminate this Lease if the proposed transaction is an assignment or a sublease (whether by one sublease or a series of related or unrelated subleases) of all or substantially all of the Demised Premises, or (iii) terminate this Lease with respect to the Leaseback Space (if the proposed transaction is a sublease of part of the Demised Premises).  Said options may be exercised by Landlord by written notice to Tenant at any time within thirty (30) days after such notice has been given by Tenant to Landlord; and during such thirty (30) day period Tenant shall not assign this lease nor sublet such space to any person.

Section 11.03.     If Landlord exercises its option to terminate this Lease in the case where Tenant desires either to assign this Lease or sublet (whether by one sublease or a series of related or unrelated subleases) all or substantially all of the Demised Premises, then, this Lease shall end and expire on the date that such assignment or sublet was to be effective or commence, as the case may be, and the minimum rent and additional rent shall be paid and apportioned to such date and any payments with respect thereto made or to be made by Tenant to such date shall be promptly returned to or paid by Tenant, as the case may be.

Section 11.04.     If Landlord exercises its option to terminate this Lease in part in any case where Tenant desires to sublet part of the Demised Premises, then, (a) this Lease shall end and expire with respect to such part of the Demised Premises on the date that the proposed sublease was to commence; and (b) from and after such date the minimum rent and additional rent shall be adjusted, based upon the proportion that the rentable area of the Demised Premises remaining bears to the total rentable area of the Demised Premises; and (c) Tenant shall pay to Landlord, upon demand, the costs incurred by Landlord in physically separating such part of the Demised Premises from the balance of the Demised Premises and in complying with any laws and requirements of any public authorities relating to such separation.

Section 11.05.     If Landlord exercises its option to sublet the Leaseback Space, such sublease to Landlord or its designee (as subtenant) shall be at the lower of (i) the rental rate per rentable square foot of minimum rent and additional rent then payable pursuant to this Lease or (ii) the rentals set forth in the proposed sublease, and shall be for the same term as that of the proposed subletting, and such sublease:

(a)     shall be expressly subject to all of the covenants, agreements, terms, provisions and conditions of this Lease except such as

14

are irrelevant or inapplicable, and except as otherwise expressly set forth to the contrary in this Section;

       (b)    shall be upon the same terms and conditions as those contained in the proposed sublease, except such as are irrelevant or inapplicable and except as otherwise expressly set forth to the contrary in this Section;

       (c)    shall give the sublessee the unqualified and unrestricted right, without Tenant's permission, to assign such sublease or any interest therein and/or to sublet the Leaseback Space or any part or parts of the Leaseback Space and to make any and all changes, alterations, and improvements in the space covered by such sublease at no cost or liability to Tenant and if the proposed sublease will result in all or substantially all of the Demised Premises being sublet, grant Landlord or its designee the option to extend the term of such sublease for the balance of the term of this Lease less one (1) day;

       (d)    shall provide that any assignee or further subtenant, of Landlord or its designee, may, at the election of Landlord, be permitted to make alterations, decorations and installations in the Leaseback Space or any part thereof and shall also provide in substance that any such alterations, decorations and installations in the Leaseback Space therein made by any assignee or subtenant of Landlord or its designee may be removed, in whole or in part, by such assignee or subtenant, at its option, prior to or upon the expiration or other termination of such sublease provided that such assignee or subtenant, at its expense, shall repair any damage and injury to that portion of the Leaseback Space so sublet caused by such removal; and

       (e)    shall also provide that (i) the parties to such sublease expressly negate any intention that any estate created under such sublease be merged with any other estate held by either of said parties, (ii) any assignment or subletting by Landlord or its designee (as the subtenant) may be for any purpose or purposes that Landlord, in Landlord's uncontrolled discretion, shall deem suitable or appropriate, (iii) Tenant, at Tenant's expense, shall and will at all times provide and permit reasonably appropriate means of ingress to and egress from the Leaseback Space so sublet by Tenant to Landlord or its designee, (iv) Landlord, at Tenant's expense, may make such alterations as may be required or deemed necessary by Landlord to physically separate the Leaseback Space from the balance of the Demised Premises and to comply with any laws and requirements of public authorities relating to such separation, and (v) that at the expiration of the term of such sublease, Tenant will accept the Leaseback Space in its then existing condition, subject to the obligations of the sublessee to make such

repairs thereto as may be necessary to preserve the Leaseback Space in good order and condition.

Section 11.06.

(a)     If Landlord exercises its option to sublet the Leaseback Space, Landlord shall indemnify and save Tenant harmless from all obligations under this Lease as to the Leaseback Space during the period of time it is so sublet to Landlord.

(b)     Performance by Landlord, or its designee, under a sublease of the Leaseback Space shall be deemed performance by Tenant of any similar obligation under this Lease and any default under any such sublease shall not give rise to a default under a similar obligation contained in this Lease, nor shall Tenant be liable for any default under this Lease or deemed to be in default hereunder if such default is occasioned by or arises from any act or omission of the tenant under such sublease or is occasioned by or arises from any act or omission of any occupant holding under or pursuant to any such sublease.

(c)     Tenant shall have no obligation, at the expiration or earlier termination of the term of this Lease, to remove any alteration, installation or improvement made in the Leaseback Space by Landlord.

Section 11.07.     In the event Landlord does not exercise an option provided to it pursuant to Section 11.02 and provided that Tenant is not in default of any of Tenant's obligations under this Lease, Landlord's consent (which must be in writing and in form reasonably satisfactory to Landlord) to the proposed assignment or sublease shall not be unreasonably withheld or delayed, provided and upon condition that:

(a)     Tenant shall have complied with the provisions of Section 11.02;

(b)     The proposed assignee or subtenant is engaged in a business and the Demised Premises, or the relevant part thereof, will be used in a manner which (i) is limited to the use expressly permitted under Sections 4.01 and 4.02 of this Lease, and (ii) is in keeping with the then standards of the Building;

(c)     The proposed assignee or subtenant is a reputable person or entity with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof;

(d)     Neither (i) the proposed assignee or sublessee nor (ii) any person which, directly or indirectly, controls, is controlled by or is

16

under common control with, the proposed assignee or sublessee, is then an occupant of any part of the Building;

(e)     The proposed assignee or sublessee is not a person with whom Landlord is currently negotiating or during the last six (6) months has negotiated to lease space in the Building;

(f)     The proposed sublease shall be in form reasonably satisfactory to Landlord and shall comply with the provisions of this Article;

(g)     At any one time there shall not be more than three (3) subtenants (including Landlord or its designee) in the Demised Premises;

(h)     Tenant shall reimburse Landlord on demand for any reasonable costs that may be incurred by Landlord in connection with said assignment or sublease, including costs incurred for obtaining financial and credit reports of the proposed assignee or subtenant, and reasonable attorneys' fees incurred in connection with the granting of any requested consent; and

(i)     Tenant shall not have (i) advertised the Demised Premises for subletting or assignment without prior notice to Landlord, or (ii) listed the same at a rental rate less than the minimum rent or additional rent at which Landlord is then offering to lease other space in the Building.

Except for any subletting by Tenant to Landlord or its designee pursuant to the provisions of this Article, each subletting pursuant to this Article shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this Lease. Notwithstanding any such subletting to Landlord or any such subletting to any other subtenant and/or acceptance of rent or additional rent by Landlord from any subtenant, Tenant shall and will remain fully liable for the payment for the minimum rent and additional rent due and to become due hereunder and for the performance of all the covenants, agreements, terms, provisions and conditions contained in this Lease on the part of Tenant to be performed and all acts and omissions of any licensee or subtenant or anyone claiming under or through any subtenant which shall be in violation of any of the obligations of this Lease, and any such violation shall be deemed to be a violation by Tenant. Tenant further agrees that notwithstanding any such subletting, no other and further subletting of the Demised Premises by Tenant or any person claiming through or under Tenant (except as provided in Section 11.05) shall or will be made except upon compliance with and subject to the provisions of this Article. If Landlord shall decline to give its consent to any proposed assignment or sublease, or if Landlord shall exercise any of its options under Section 11.02, Tenant shall indemnify, defend and hold harmless Landlord against and from any and all loss, liability, damages, costs and expenses (including reasonable counsel fees) resulting from any claims that may be made against Landlord by the proposed assignee or sublessee or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease, excluding any

17

employed directly by Landlord and not claiming through Tenant or the proposed assignee or subtenant.

Section 11.08.    In the event that (a) Landlord fails to exercise any of its options under Section 11.02 and consents to a proposed assignment or sublease, and (b) Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within thirty (30) days after the giving of such consent, then, Tenant shall again comply with all of the provisions and conditions of Section 11.02 before assigning this Lease or subletting all or part of the Demised Premises.

Section 11.09.    With respect to each and every sublease or subletting authorized by Landlord under the provisions of this Lease, it is further agreed:

(a)    No subletting shall be for a term ending later than one day prior to the expiration date of this Lease;

(b)    No sublease shall be valid, and no subtenant shall take possession of the Premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord;

(c)    Each sublease shall provide that it is subject and subordinate to this Lease and to the matters to which this Lease is or shall be subordinate, and that in the event of termination, re-entry or dispossess by Landlord under this Lease Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor, under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (i) be liable for any previous act or omission of Tenant under such sublease, (ii) be subject to any offset, not expressly provided in such sublease, which theretofore accrued to such subtenant against Tenant, or (iii) be bound by any previous modification of such sublease or by any previous prepayment of more than one month's rent.

Section 11.10.    If Landlord gives its consent to any assignment of this Lease or to any sublease, Tenant shall, in consideration therefor, pay to Landlord, as additional rent:

(a)    in the case of an assignment of this Lease or an assignment by any sublessee of any sublease, an amount equal to fifty percent (50%) of all sums and other considerations paid to Tenant from the assignee for such assignment or paid to Tenant by any sublessee or other person claiming through or under Tenant for such assignment, (including, but not limited to sums paid for the sale of Tenant's or sublessee's fixtures, leasehold improvements, less, in case of a sale thereof, the then net unamortized or undepreciated cost thereof determined on the basis of Tenant's or sublessee's federal income tax returns).  The sums payable to

18

Landlord under this Section 11.10(a) shall be paid to Landlord as and when paid by such assignee to Tenant; and

(b)     in the case of a sublease by Tenant or by any sublessee or other person claiming through or under Tenant, an amount equal to fifty percent (50%) of the rents and charges and other consideration payable under the sublease to Tenant by the subtenant or paid to Tenant by any such sublessee or other person claiming through or under Tenant in connection with such subletting, which is in excess of the minimum rent accruing during the term of the sublease in respect of the subleased space (at the rate per square foot payable by Tenant hereunder or such sublessee) pursuant to the terms of this Lease or such sublease (including, but not limited to sums paid for the sale or rental of Tenant's or such sublessee's fixtures, leasehold improvements, less, in case of a sale thereof, the then net unamortized or undepreciated cost thereof determined on the basis of Tenant's or sublessee's federal income tax returns). The sums payable to Landlord under this Section 11.10(b) shall be paid to Landlord as and when paid by such subtenant to Tenant.

(c)     For the purposes of computing the sums payable by Tenant to Landlord under subparagraphs (a) and (b) hereof, there shall be excluded from the consideration payable to Tenant by any assignee or sublessee any transfer taxes, rent concession, reasonable attorneys' fees, reasonable brokerage commissions, advertising costs and fix-up costs paid by Tenant with respect to such assignment or subletting, but only to the extent any such sums are allocable to the period of this Lease (in the case of any assignment), or the term of any sublease.

Section 11.11.     If Tenant or any permitted subtenant is a corporation, partnership, limited liability company or other entity, the provisions of Section 11.01 shall apply to a transfer (by one or more transfers) of a majority of the stock, partnership, membership or other ownership interests of Tenant or such subtenant as if such transfer of a majority of the stock, partnership, membership or other ownership interests of Tenant or such subtenant were an assignment of this Lease; but said provisions and the provisions of Section 11.02 shall not apply to transactions with a corporation, partnership, limited liability company or other entity into or with which Tenant or such subtenant is merged or consolidated or to which substantially all of Tenant's or such subtenant's assets are transferred or to any corporation, partnership, limited liability company or other entity which controls, is controlled by or is under common control with Tenant or such subtenant, provided that in any of such events, (i) the successor to Tenant or such subtenant has a net worth computed in accordance with generally accepted accounting principles at least equal to the greater of (1) the net worth of Tenant or such subtenant immediately prior to such merger, consolidation or transfer, or (2) the net worth of Tenant herein named on the date of this Lease or the net worth of such subtenant on the date of the sublease, and (ii) proof satisfactory to Landlord of such net worth shall have been delivered to Landlord at least ten (10) days prior to the effective date of any such transaction.

19

Section 11.12.    Any assignment or transfer, whether made with Landlord's consent pursuant to Section 11.01 or without Landlord's consent pursuant to Section 11.11, shall be made only if, and shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement in form and substance satisfactory to Landlord whereby the assignee shall assume the obligations of this Lease on the part of Tenant to be performed or observed, and whereby the assignee shall agree that the provisions in Section 11.01 shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect of all future assignments and transfers. The original named Tenant covenants that, notwithstanding any assignment or transfer, whether or not in violation of the provisions of this Lease, and notwithstanding the acceptance of minimum rent and/or additional rent by Landlord from an assignee, transferee, or any other party, the original named Tenant shall remain fully liable for the payment of the minimum rent and additional rent and for the other obligations of this Lease on the part of Tenant to be performed or observed.

Section 11.13.    The joint and several liability of Tenant and any immediate or remote successor in interest of Tenant and the due performance of the obligations of this Lease on Tenant's part to be performed or observed shall not be discharged, released or impaired in any respect by any agreement or stipulation made by Landlord extending the time of, or modifying any of the obligations of, this Lease, or by any waiver or failure of Landlord to enforce any of the obligations of this Lease.

Section 11.14.    The listing of any name other than that of Tenant, whether on the doors of the Demised Premises or the Building directory, or otherwise, shall not operate to vest any right or interest in this Lease or in the Demised Premises, nor shall it be deemed to be the consent of Landlord to any assignment or transfer of this Lease or to any sublease of the Demised Premises or to the use or occupancy thereof by others.

Section 11.15.    Provided that Tenant is not in default hereunder and complies with this Article, upon not less than thirty (30) days prior notice to Landlord, the named Tenant may, without Landlord's consent and without being subject to Section 11.02, permit Tenant's attorneys, accountants, business consultants and other professionals (collectively, "Desk Sharing Occupant") to occupy desk space comprising not more than a total of three (3) offices in the Demised Premises, provided that such desk space shall in no event exceed ten percent (10%) of the rentable square feet of the Demised Premises, in the aggregate (plus the use of the conference room and reception area), and Tenant shall not create any demising walls for the designated desk sharing area (the "Desk Sharing Space"), provided further that the Desk Sharing Occupant shall have an ongoing business relationship with Tenant and shall not have any rights hereunder nor shall such occupancy create a landlord/tenant relationship or any privity with Landlord. The Desk Sharing Occupant shall comply with Article 4 of this Lease and be engaged in an occupation which is, in the judgment of Landlord, in keeping with the first-class, professional office character of the Building. Tenant shall deliver to Landlord together with such notice a duplicate original of the license agreement or occupancy agreement between Tenant and the Desk Sharing Occupant which agreement shall expressly provide that it is

20

subject and subordinate to this Lease, a statement setting forth in reasonable detail the identity of each Desk Sharing Occupant, the nature of the Desk Sharing Occupant's business and the proposed use of the Demised Premises which shall comply with Article 4.

## ARTICLE 12

### No Liability of Landlord and Indemnity of Tenant

Section 12.01.    Tenant shall indemnify Landlord, its agents, contractors and employees against and save Landlord, its agents, contractors and employees harmless from any liability to and claim by or on behalf of any person, firm, governmental authority, corporation or entity for personal injury, death or property damage, arising (i) from Tenant's use of the Demised Premises or from any work whatsoever done or omitted to be done by Tenant, its employees, agents, contractors, customers, invitees or visitors, or from any accident thereat, except when caused solely by the negligence or willful act of Landlord, its agents, contractors and employees, and (ii) from any default by Tenant under the terms, covenants and conditions of this Lease.

Tenant also shall indemnify Landlord, its agents, contractors and employees against and save Landlord, its agents, contractors and employees harmless from all costs, reasonable counsel fees, expenses and penalties incurred by Landlord, its agents, contractors and employees in connection with any such liability or claim.

If any action or proceeding shall be brought against Landlord in connection with any such liability or claim, Tenant, on notice from Landlord, shall defend such action or proceeding, at Tenant's expense, by counsel reasonably satisfactory to Landlord. Counsel for Tenant's insurance carrier is satisfactory.

Section 12.02.    Landlord shall not be liable for any damage to property of Tenant or of others entrusted to employees of the Building, nor for the loss of or damage to any property of Tenant by theft or otherwise, except if due to the negligence of Landlord, its agents, contractors or employees. Landlord and its agents shall not be liable for any injury or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water, rain or snow or leaks from any part of the Building or from the pipes, appliances or plumbing works or from the roof, street or sub-surface or from any other place or by dampness or by any other cause of whatsoever nature, except if due to the negligence of Landlord, its agents, contractors or employees; nor shall Landlord be liable for any such damage caused by other tenants or persons in the Building or caused by operations in construction of any public or quasi-public work. If, at any time any windows of the Demised Premises are permanently closed, darkened or bricked up in accordance with the requirements of law or are temporarily darkened or closed by reason of repairs, alterations or maintenance by Landlord, Landlord shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement of rent nor shall the same release Tenant from its obligations hereunder nor

21

constitute an eviction.  (Reference hereinabove to Landlord shall for all purposes be deemed to include the Overlandlord as defined in Article 25.)

Tenant shall reimburse and compensate Landlord, as additional rent, within ten (10) days after rendition of a statement for all expenditures made by or damages or fines sustained or incurred by Landlord due to any default by Tenant under this Lease.

Tenant shall give immediate notice to Landlord upon its discovery of accidents in the Demised Premises.

Section 12.03.     If in this Lease it is provided that Landlord's consent or approval as to any matter will not be unreasonably withheld, and it is established by a court or body having final jurisdiction thereover that Landlord has been unreasonable, the only effect of such finding shall be that Landlord shall be deemed to have given its consent or approval; but Landlord shall not be liable to Tenant in any respect for money damages by reason of withholding its consent.

## ARTICLE 13

### Moving of Heavy Equipment

Tenant shall not move any safe, heavy equipment or bulky matter, except for standard office equipment or furniture, in or out of the Building without Landlord's written consent, which shall not be unreasonably withheld.  If the movement of such items requires special handling, Tenant agrees to employ only persons holding a Master Rigger's License to do said work and all such work shall be done in full compliance with the Administrative Code of the City of New York and other municipal requirements.  All such movements shall be made during hours which will least interfere with the normal operations of the Building, and all damage caused by such movement shall be promptly repaired by Tenant at Tenant's expense.

## ARTICLE 14

### Condemnation

Section 14.01.     In the event that the whole of the Demised Premises shall be condemned or taken in any manner for any public or quasi-public use, this Lease and the term and estate hereby granted shall forthwith cease and terminate as of the date of vesting of title.  In the event that a portion of the Demised Premises shall be so condemned or taken, then, effective as of the date of vesting of title, the rent hereunder for such part shall be equitably abated and this Lease shall continue as to such part not so taken.  In the event that a portion of the Building shall be so condemned or taken, then (a) if substantial structural alteration or reconstruction of the Building shall, in the reasonable opinion of Landlord, be necessary or appropriate as a result of such condemnation or

22

taking (whether or not the Demised Premises be affected), Landlord may, at its option, terminate this Lease and the term and estate hereby granted as of the date of such vesting of title by notifying Tenant in writing of such termination within ninety (90) days of following the date on which Landlord shall have received notice of vesting of title, or (b) if Landlord does not elect to terminate this Lease, as aforesaid, this Lease shall be and remain unaffected by such condemnation or taking, except that the minimum rent and additional rent shall be abated to the extent, if any, hereinbefore provided. In the event that only a part of the Demised Premises shall be so condemned or taken and this Lease and the term and estate hereby granted are not terminated as hereinbefore provided, Landlord, out of the portion of the award allocated for such purpose and to the extent such award is sufficient, will restore with reasonable diligence the remaining portions of the Demised Premises as nearly as practicable to the same condition as it was in prior to such condemnation or taking.

Section 14.02.    In the event of termination in any of the cases hereinabove provided, this Lease and the term and estate hereby granted shall expire as of the date of such termination with the same effect as if that were the Expiration Date and the rent hereunder shall be apportioned as of such date.

Section 14.03.    In the event of any condemnation or taking hereinabove mentioned of all or a part of the Building, Landlord shall be entitled to receive the entire award in the condemnation proceeding, including any award made for the value of the estate vested by this Lease in Tenant, and Tenant hereby expressly assigns to Landlord any and all right, title and interest of Tenant now or hereafter arising in or to any such award or any part thereof, and Tenant shall be entitled to receive no part of such award. However, Tenant may make a separate claim with the condemning authority for Tenant's trade fixtures and relocation costs, provided the same does not affect or reduce Landlord's award.

## ARTICLE 15

### Entry, Right to Change Public Portions of the Building

Section 15.01.    Tenant shall permit Landlord to erect, use and maintain pipes and conduits in and through the walls, ceiling or below the floors of the Demised Premises. Landlord, or its agents or designees shall have the right, to enter the Demised Premises for the purpose of making such repairs or alterations as Landlord shall desire, shall be required or shall have the right to make under the provisions of this Lease; and shall also have the right to enter the Demised Premises for the purpose of inspecting them or exhibiting them to prospective purchasers or lessees of the Building or to prospective mortgagees or to prospective assignees of any such mortgagees. Landlord shall be allowed to take all material into and upon the Demised Premises that may be required for the repairs or alterations above mentioned without the same constituting an eviction of Tenant in whole or in part and the rent reserved shall in no wise abate while said repairs or alterations are being made.

23

Section 15.02.        During the six (6) months prior to the expiration of the term of this Lease, Landlord may exhibit the Demised Premises to prospective tenants.

Section 15.03.        Landlord shall have the right at any time without thereby creating an actual or constructive eviction or incurring any liability to Tenant therefor, to change the arrangement or location of, but not limited to, such of the following as are not contained within the Demised Premises: entrances, passageways, doors and doorways, corridors, elevators, stairs, toilets, and other like public service portions of the Building.

Section 15.04.        Landlord shall have the right at any time to name the Building as it desires and to change any and all such names at any time thereafter.

## ARTICLE 16

### Conditional Limitations

Section 16.01.        If at any time during the term of this Lease:

(a)        Tenant shall file a petition in bankruptcy or insolvency or for reorganization or arrangement or for the appointment of a receiver of all or a portion of Tenant's property, or

(b)        Any petition of the kind referred to in subdivision (a) of this Section shall be filed against Tenant and such petition shall not be vacated or withdrawn within ninety (90) days after the date of filing thereof, or

(c)        Tenant shall be adjudicated a bankrupt by any court, or

(d)        Tenant shall make an assignment for the benefit of creditors, or

(e)        a permanent receiver shall be appointed for the property of Tenant by order of a court of competent jurisdiction by reason of the insolvency of Tenant (except where such receiver shall be appointed in an involuntary proceeding, if he shall not be withdrawn within ninety (90) days after the date of his appointment),

then Landlord, at Landlord's option, may terminate this Lease on five (5) days' notice to Tenant, and upon such termination, Tenant shall quit and surrender the Demised Premises to Landlord.

Section 16.02.

(a)        If Tenant assumes this Lease and proposes to assign

24

the same pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") to any person or entity who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant, then notice of such proposed assignment, setting forth (i) the name and address of such person, (ii) all of the terms and conditions of such offer, and (iii) the adequate assurance to be provided Landlord to assure such person's future performance under the Lease, including, without limitation, the assurance referred to in section 365(b)(3) of the Bankruptcy Code, shall be given to Landlord by Tenant not later than twenty (20) days after receipt by Tenant but in no event later than ten (10) days prior to the date that Tenant shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Landlord shall thereupon have the prior right and option, to be exercised by notice to Tenant given at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such person, less any brokerage commissions which may be payable out of the consideration to be paid by such person for the assignment of this Lease.

(b)     If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, any and all monies or other considerations payable or otherwise delivered in connection with such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any and all monies or other considerations constituting Landlord's Property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid to Landlord.

(c)     Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code, shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment. Any such assignee shall upon demand execute and deliver to Landlord an instrument confirming such assumption.

(d)     Nothing contained in this Section shall, in any way, constitute a waiver of the provisions of this Lease relating to assignment. Tenant shall not, by virtue of this Section, have any further rights relating to assignment other than those granted in the Bankruptcy Code.

(e)     Notwithstanding anything in this Lease to the contrary, all amounts payable by Tenant to or on behalf of Landlord under this Lease, whether or not expressly designated as rent, shall constitute rent for the purposes of Section 502(b)(6) of the Bankruptcy Code.

(f)     The term "Tenant" as used in this Section and in Section 16.01, includes any guarantor(s) of this Lease and any trustee, debtor in possession, receiver, custodian or other similar officer.

Section 16.03.  If this Lease shall terminate pursuant to the provisions of Section 16.01:

(a)     Landlord shall be entitled to recover from Tenant arrears in minimum rent and additional rent and, in addition thereto as liquidated damages, an amount equal to the difference between the minimum rent and additional rent for the unexpired portion of the term of this Lease which had been in force immediately prior to the termination effected under Section 16.01 of this Article and the fair and the reasonable rental value of the Demised Premises, on the date of termination, for the same period, both discounted at the rate of eight (8%) percent per annum to the date of termination; or

(b)     Landlord shall be entitled to recover from Tenant arrears in minimum rent and additional rent and, in addition thereto as liquidated damages, an amount equal to the maximum allowed by statute or rule of law in effect at the time when and governing the proceedings in which such damages are to be proved, whether or not such amount be greater or less than the amount referred to in subdivision (a) of this Section.

Section 16.04.

(a)     If Tenant shall fail to make any payment of any minimum rent or additional rent when the same becomes due and payable, or if Tenant shall fail to cancel or discharge the lien referred to in Section 17.02, if Tenant fails to deliver the estoppel certificate referred to in Article 26, or if the Demised Premises become vacant or deserted, and if any such default shall continue for a period of five (5) days after written notice by Landlord, or

(b)     if Tenant shall be in default in the performance of any of the other terms, covenants and conditions of this Lease, and such default shall not have been remedied within twenty (20) days after notice by Landlord to Tenant specifying such default and requiring it to be remedied; or where such default reasonably cannot be remedied within such period of twenty (20) days, if Tenant shall not have commenced the remedying thereof within such period of time and shall not be proceeding with due diligence to remedy it,

then Landlord, at Landlord's election, may terminate this Lease on five (5) days' written notice to Tenant, and upon such termination Tenant shall quit and surrender the Demised Premises to Landlord.

26

Section 16.05.        If this Lease shall terminate as provided in this Article, or if Tenant shall be in default in the payment of minimum rent or additional rent when the same become due and payable and such default shall continue for a period of five (5) days after written notice by Landlord,

(a)      Landlord may re-enter and resume possession of the Demised Premises and remove all persons and property therefrom either by summary dispossess proceedings or by a suitable action or proceeding, at law or in equity, or by force or otherwise, without being liable for any damages therefor, and

(b)      Landlord may re-let the whole or any part of the Demised Premises for a period equal to, greater or less than the remainder of the then term of this Lease, at such rental and upon such terms and conditions as Landlord shall deem reasonable to any tenant it may deem suitable and for any use and purpose it may deem appropriate. Landlord shall not be liable in any respect for failure to re-let the Demised Premises or, in the event of such re-letting, for failure to collect the rent thereunder and any sums received by Landlord on a re-letting in excess of the rent reserved in this Lease shall belong to Landlord.

Section 16.06.        If this Lease shall terminate as provided in this Article or by summary proceedings (except as to any termination under Section 16.01), Landlord shall be entitled to recover from Tenant as damages, in addition to arrears in minimum rent and additional rent,

(a)      an amount equal to (i) all reasonable expenses incurred by Landlord in recovering possession of the Demised Premises and in connection with the re-letting of the Demised Premises, including, without limitation, the reasonable cost of repairing, renovating or remodeling the Demised Premises, and (ii) all reasonable brokers' commissions and legal fees incurred by Landlord in re-letting the Demised Premises, which amounts set forth in this subdivision (a) shall be due and payable by Tenant to Landlord at such time or times as they shall have been incurred; and

(b)      an amount equal to the deficiency between the minimum rent and additional rent which would have become due and payable had this Lease not terminated and the net amount, if any, of rent collected by Landlord on re-letting the Demised Premises. The amounts specified in this subdivision shall be due and payable by Tenant on the several days on which such minimum rent and additional rent would have become due and payable had this Lease not terminated. Tenant consents that Landlord shall be entitled to institute separate suits or actions or proceedings for the recovery of such amount or amounts, and Tenant hereby waives the right to

27

enforce or assert the rule against splitting a cause of action as a defense thereto.

Landlord, at its election, at any time after such termination of this Lease, may collect from Tenant and Tenant shall pay, in lieu of the sums becoming due, under the provisions of subdivision (b) of this Section, an amount equal to the difference between the minimum rent and additional rent which would have become due and payable had this Lease not terminated (from the date of the service of such notice to the end of the term of this Lease which had been in force immediately prior to any termination effected under this Article) and the then fair and reasonable rental value of the Demised Premises for the same period, both discounted to the date of the service of such notice at the rate of eight (8%) percent per annum.

Section 16.07.        Tenant, for itself and for all persons claiming through or under it, hereby waives any and all rights which are or may be conferred upon Tenant by any present or future law to redeem the Demised Premises after a warrant to dispossess shall have been issued or after judgment in an action of ejectment shall have been made and entered.

Section 16.08.        The words "re-enter" and "re-entry", as used in this Article, are not restricted to their technical legal meanings.

Section 16.09.  Landlord shall not be required to give any notice of its intention to re-enter, except as otherwise provided in this Lease.

Section 16.10.        If this Lease shall terminate as provided in this Article or by summary proceedings or otherwise, Landlord, in addition to any other rights under this Article, shall be entitled to recover as damages, (a) the reasonable cost of performing any work required to be done by Tenant under this Lease; and (b) the reasonable cost of placing the Demised Premises in the same condition as that in which Tenant is required to surrender them to Landlord under this Lease.

Section 16.11.        In any action or proceeding brought by Landlord against Tenant, predicated on a default in the payment of minimum rent or additional rent, Tenant shall not have the right to and shall not interpose any set-off or counterclaim of any kind whatsoever, except for a mandatory counterclaim.  If Tenant has any claim, Tenant shall be entitled only to bring an independent action therefor; and if such independent action is brought by Tenant, Tenant shall not be entitled to and shall not consolidate it with any pending action or proceeding brought by Landlord against Tenant for a default in the payment of minimum rent or additional rent.

## ARTICLE 17

### Mechanic's Liens

Section 17.01.      If, subject to and notwithstanding Landlord's consent as required under this Lease, Tenant shall cause any changes, alterations, additions, improvements, installations or repairs to be made to or at the Demised Premises or shall cause any labor to be performed or material to be furnished in connection therewith, neither Landlord nor the Demised Premises, under any circumstances, shall be liable for the payment of any expense incurred or for the value of any work done or material furnished, and all such changes, alterations, additions, improvements, installations and repairs and labor and material shall be made, furnished and performed upon Tenant's credit alone and at Tenant's expense, and Tenant shall be solely and wholly responsible to contractors, laborers, and materialmen furnishing and performing such labor and material. Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, to any contractor, laborer or materialman to furnish to perform any such labor or material.

Section 17.02.      If, because of any act or omission (or alleged act or omission) of Tenant, any mechanic's or other lien, charge or order for the payment of money shall be filed against the Demised Premises or the Building or Landlord's estate as tenant under any ground or underlying lease (whether or not such lien, charge or order is valid or enforceable as such), Tenant, at Tenant's expense, shall cause it to be cancelled or discharged of record by bonding or otherwise within twenty (20) days after such filing, and Tenant shall indemnify Landlord against and save Landlord harmless from and shall pay all costs, expenses, losses, fines and penalties, including, without limitation, reasonable attorneys' fees resulting therefrom.

## ARTICLE 18

### Landlord's Right to Perform Obligations

If Tenant shall default in the performance of any of the terms, covenants and conditions of this Lease, Landlord, without being under any obligation to do so and without hereby waiving such default, may remedy such default for the account and at the expense of Tenant.  Any payment made or expense incurred by Landlord for such purpose (including, but not limited to, reasonable attorneys' fees) with interest at the maximum legal rate, shall be deemed to be additional rent hereunder and shall be paid by Tenant to Landlord on demand, or at Landlord's election, added to any subsequent installment or installments of minimum rent.

## ARTICLE 19

### Covenant of Quiet Enjoyment

Landlord covenants that upon Tenant paying the minimum rent and additional rent and observing and performing all the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, after any applicable notice and prior to the expiration of any applicable cure period, Tenant may peaceably and quietly enjoy the Demised Premises, subject nevertheless to the terms and conditions of this Lease, and provided, however, that no eviction of Tenant by reason of paramount title, the foreclosure of any mortgage now or hereafter affecting the Demised Premises or by reason of any termination of any ground or underlying lease to which this Lease is subject and subordinate, whether such determination is by operation of law, by agreement or otherwise, shall be construed as a breach of this covenant nor shall any action be brought against Landlord by reason thereof.

## ARTICLE 20

### Excavation

In the event that construction is to be commenced or an excavation is made or authorized for building or other purposes upon land adjacent to the Building, Tenant shall, if necessary, afford to the person or persons causing or authorized to commence construction or cause such excavation or to engage in such other purpose, license to enter upon the Demised Premises for the purpose of doing such work as shall reasonably be necessary to protect or preserve the Building, from injury or damage and to support the Building and any new structure to be built by proper foundations, pinning and/or underpinning, or otherwise.

## ARTICLE 21

### Services and Equipment

Section 21.01.    So long as Tenant is not in default under any of the terms, covenants and conditions of this Lease, Landlord shall, at its cost and expense:

(a)    Provide operatorless passenger elevator service Mondays through Fridays from 8:00 A.M. to 6:00 P.M., Saturdays, Sundays and Holidays excepted.  Notwithstanding the above, a passenger elevator will be available at all times.  A service elevator shall be available Mondays through Fridays, only from 8:00 A.M. to 4:30 P.M., Saturdays, Sundays and Holidays excepted.

30

(b)      Maintain and keep in good order and repair the central heating, ventilating and air-conditioning system installed by Landlord. The system will be operated by Landlord on Mondays through Fridays, from 9:00 A.M. to 6:00 P.M., Saturdays, Sundays and holidays excepted.  Said system is designed to be capable of maintaining, within tolerances normal in first-class office buildings, inside space conditions for any open floor averaging 78 degrees Fahrenheit dry bulb and fifty (50%) percent relative humidity when outside conditions are 95 degrees Fahrenheit dry bulb and 75 degrees Fahrenheit wet bulb, and a temperature of not lower than for any one floor an average of 68 degrees Fahrenheit when outside temperature is 50 degrees Fahrenheit or lower.  The foregoing design conditions shall be based on an occupancy of no more than (1) person per one hundred (100) usable square feet, and upon a combined lighting and standard electrical load not to exceed three (3) watts per usable square feet (excluding the Building HVAC), unless energy and/or water conservation laws or requirements of public authorities, shall mandate for any reduction in operation below said design criteria, in which case such equipment shall be operated in accordance therewith.

(c)      Provide Building standard cleaning services in Tenant's office space and public portions of the Building, except no services shall be performed Saturdays, Sundays and holidays, all in accordance with Schedule E attached hereto.  If, however, any additional cleaning of the Demised Premises is to be done by Tenant, it shall be done at Tenant's sole expense, in a manner reasonably satisfactory to Landlord and no one other than persons approved by Landlord shall be permitted to enter the Demised Premises or the Building for such purpose.  Tenant, at its own cost, may utilize its own employees or outside contractors to perform additional cleaning services in the Demised Premises, provided such employees or outside contractors do not cause any labor disruption, dispute or disturbance in or around the Building or violate Landlord's union contracts affecting the Building.  If Tenant shall require additional cleaning services, Tenant may award a contract for such services to any contractor that is approved by Landlord; provided however, that prior to making such award, Tenant shall inform Landlord of the terms upon which such contractor shall provide such additional cleaning services and, in the event that Landlord's designated contractor can provide such additional cleaning services on equal or better terms, Tenant shall award such contract to Landlord's designated contractor.  Tenant shall pay for the cost of the services performed by such designated contractor within ten (10) days after being billed.

(d)      Furnish cold water for lavatory purposes.  If Tenant requires, uses or consumes water for any other purposes, Landlord may install a meter or meters or other means to measure Tenant's water consumption, and Tenant shall reimburse Landlord for the cost of the meter or meters and the installation thereof, and shall pay for the maintenance of said meter equipment and/or pay Landlord's cost of other means of

31

measuring such water consumption by Tenant. Tenant shall pay to Landlord on demand the cost of all water consumed as measured by said meter or meters or as otherwise measured, including sewer rents.

(e)   If Tenant shall require and request any of the foregoing services at times other than above provided, and if such request is made at least forty-eight (48) hours prior to the time when such additional services are required, Landlord will provide them and Tenant shall pay to Landlord, in advance, the charges therefor at the then Building standard rate charged to other tenants in the Building.

If Tenant shall request Landlord to furnish any services in addition to those hereinabove provided or perform any work not required under this Lease, and Landlord agrees to furnish and/or perform the same, Tenant shall pay to Landlord, in advance, the charges therefor, which charges are deemed to be additional rent and payable as such.

Section 21.02.   Holidays shall be deemed to mean all federal holidays, state holidays, Building Service Employees Union Contract holidays and all other applicable union contract holidays.

Section 21.03.   Landlord reserves the right to interrupt, curtail or suspend the services required to be furnished by Landlord under this Lease when the necessity therefor arises by reason of alterations, repairs, accident, emergency, mechanical breakdown, or when required by any law, order or regulation of any Federal, State, County or Municipal authority, or for any other cause beyond the reasonable control of Landlord. Tenant shall not be entitled to nor shall Tenant make claim for any diminution or abatement of minimum rent or additional rent or other compensation, nor shall this Lease or any of the obligations of Tenant be affected or reduced by reason of such interruption, curtailment, suspension, work or inconvenience.

Section 21.04.   Tenant shall reimburse Landlord promptly upon demand for the cost to Landlord of removal from the Demised Premises and the Building of any refuse and rubbish of Tenant not covered by the Cleaning Specifications and Tenant shall pay all bills therefor when rendered.

Section 21.04.   During the term of this Lease, Tenant shall have access to the Demised Premises twenty-four (24) hours per day, seven (7) days per week, subject to emergencies, police power, fire department restrictions, and the provisions of Articles 10, 14 and 34 hereof.

Section 21.05.   Tenant shall have the right to one (1) sign in the elevator lobby on the 30th floor of the Building, at Tenant's expense, and up to five (5) listings on the Building directory located in the lobby of the Building.

32

# ARTICLE 22

## Escalation

Section 22.01.    Taxes.    Tenant shall pay to Landlord, as additional rent, tax escalation in accordance with this Section:

(a)    Definitions: For the purpose of this Section, the following definitions shall apply:

(i)    The term "Tax Base Factor" shall mean the average of the real estate taxes for the Building Project for the periods from July 1, 2010 to June 30, 2011 (as finally determined).

(ii)    The term "Building Project" shall mean the parcel of land described in Schedule C of this Lease with all improvements erected thereon.

(iii)    The term "comparative tax year" shall mean the New York City real estate tax year commencing on July 1, 2011, and each subsequent New York City real estate tax year. If the present use of July 1 - June 30 New York City real estate tax year shall hereafter be changed, then such changed tax year shall be used with appropriate adjustment for the transition.

(iv)    The term "real estate taxes" shall mean the total of all taxes, special or other assessments and charges of any Special Business Improvement District levied, assessed or imposed at any time by any governmental authority upon or against the Building Project, and also any tax or assessment levied, assessed or imposed at any time by any governmental authority in connection with the receipt of income or rents from said Building Project to the extent that same shall be in lieu of all or a portion of any of the aforesaid taxes or assessments, or additions or increases thereof, upon or against said Building Project, excluding income, estate and franchise taxes. If, due to a future change in the method of taxation or in the taxing authority, or for any other reason, a franchise, income, transit, profit, rents or other tax or governmental imposition, however designated, shall be levied against Landlord in substitution in whole or in part for the real estate taxes, or in lieu of or additions to or increases of said real estate taxes, then such franchise, income, transit, profit or other tax or governmental

33

imposition shall be deemed to be included within the definition of "real estate taxes" for the purposes hereof.

       (v)     The term "Percentage" for purposes of computing tax escalation, shall mean 1.44%.

       (b)   (i)    In the event that the real estate taxes payable for any comparative tax year shall exceed the Tax Base Factor, Tenant shall pay to Landlord, as additional rent for such comparative tax year, an amount for tax escalation equal to the Percentage of the excess. Before or after the start of each comparative year, Landlord shall furnish to Tenant a statement of the real estate taxes payable for such comparative tax year. Tenant shall make its aforesaid tax escalation payment to Landlord, in installments in the same manner that such taxes are payable by Landlord to the governmental authority. If a statement is furnished to Tenant after the commencement of the comparative tax year in respect of which such statement is rendered, Tenant shall, within ten (10) days thereafter, pay to Landlord an amount equal to those installments of the total tax escalation payable as provided in the preceding sentence, during the period prior to the first day of the month next succeeding the month in which the applicable statement has been furnished. If on the first day of the first month of any New York City real estate fiscal tax year, the amount of real estate taxes shall not have been determined by the taxing authority, then the amount of taxes payable by Tenant shall be estimated by Landlord based on the amount of the corresponding real estate taxes for the immediately preceding real estate fiscal tax year. Any such estimated taxes shall be subject to adjustment when the amount of such taxes shall be determined, and payment or credit of such adjustment shall be made upon billing by Landlord. If, during the term of this Lease, Real Estate Taxes are required to be paid, in full or in monthly or other installments, on any other date or dates than as presently required, or if Landlord shall be required to make monthly deposits of Real Estate Taxes to the holder of any mortgage, then Tenant's Tax Escalation Payment(s) shall be correspondingly adjusted so that the same are due to Landlord in corresponding installments not later than thirty (30) days prior to the last date on which the applicable installment of such Real Estate Taxes shall be due and payable to the governmental authority or such mortgagee.

(ii)   If in establishing the amount of the real estate taxes payable for any comparative tax year, Landlord has incurred expenses for legal and/or consulting services rendered in, applying for, negotiating or obtaining a reduction of the assessment upon which the real estate taxes are predicated, Tenant shall pay an amount equal to the Percentage of such expenses.

(iii)   The statements of the tax escalation to be furnished by Landlord as provided above shall be certified by Landlord as correct and shall constitute a final determination as between Landlord and Tenant of the tax escalation for the periods represented thereby, except for manifest error.

(iv)   In no event shall the fixed minimum rent under this Lease be reduced by virtue of this Section 22.01.

(v)   Upon the date of any expiration or termination of this Lease, whether the same be the date hereinabove set forth for the expiration of the term or any prior or subsequent date, a proportionate share of said additional rent for the comparative tax year during which such expiration or termination occurs shall immediately become due and payable by Tenant to Landlord, if it was not theretofor already billed and paid. The said proportionate share shall be based upon the length of time that this Lease shall have been in existence during such comparative tax year.   Prior to or promptly after said expiration or termination, Landlord shall compute the additional rent due from Tenant, as aforesaid and Tenant shall promptly pay Landlord any amount unpaid.  If Landlord shall receive a refund of any amount of real estate taxes for any comparative tax year for which Tenant has made a payment, Landlord shall promptly pay to Tenant the Percentage of any such refund, less the Percentage of any legal fees and other expenses provided for in Section 22.01(b)(ii) to the extent the same have not theretofore not been paid by Tenant to Landlord.

(vi)   Tenant's and Landlord's obligations to make the adjustments referred to in subdivision (v) above shall survive any expiration or termination of this Lease.

(vii)   Any delay or failure of Landlord in billing any tax escalation hereinabove provided shall not constitute a waiver of or in any way impair the continuing obligation of Tenant to pay such tax escalation hereunder.

35

(viii)   Notwithstanding any language to the contrary in this Lease, Landlord and Tenant agree that for the purposes of this Section 22.01, Real Estate Taxes and Tax Escalation Payments shall be calculated without regard to any deductions, credits, abatements, or deferral of Real Estate taxes which Landlord may receive pursuant to Sections 489aaaaaa through 489kkkkkk, authorized by Title 2-F of Article 4 of the New York Real Property Tax Law and any and all rules and regulations promulgated thereunder, including any successor statute (herein collectively called the "ICAP Program").

Section 22.02.   Porter's Wage Rate.  Tenant shall pay to the Landlord, as additional rent, a porter's wage rate escalation in accordance with this Section:

(a)   For the purpose of this Section, the following definitions shall apply:

(i)   "Wage Rate(s)" shall mean the minimum regular hourly rate of wages in effect, from time to time, during each calendar year (whether paid by Landlord or any contractor employed by Landlord) computed as paid over a forty hour week to Porters in Class A office buildings pursuant to an Agreement between Realty Advisory Board on Labor Relations, Incorporated, or any successor thereto, and Local 32B-32J of the Building Service Employees International Union, AFL-CIO, or any successor thereto; and provided, however, that if there is no such agreement in effect prescribing a wage rate for Porters, computations and payments shall thereupon be made upon the basis of the regular hourly wage rate actually payable in effect as of January 1st of each year, and provided, however, that if in any year during the term, the regular employment of Porters shall occur on days or during the hours when overtime or other premium pay rates are in effect pursuant to such Agreement, then the term "hourly rate of wages" as used herein shall be deemed to mean the average hourly rate for the hours in a calendar week during which Porters are regularly employed (e.g., if pursuant to an agreement between Realty Advisory Board and the Local the regular employment of Porters for forty hours during a calendar week is at a regular hourly wage rate of $3.00 for the first thirty hours, and premium or overtime hourly wage rate of $4.50 for the remaining ten hours, then the hourly rate of wages under this Article during such period shall be the total weekly rate of $135.00 divided by the total number

36